AO 106 (Rev. 5/85) Affidavit for Search Warrant

# United States District Court

FILED

08 APR 29 AM 10: 23

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN **DISTRICT OF** CALIFORNIA

### In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

A rented room located within 8393 Capricorn Way #94,
San Diego, California
and a 2006 silver Dodge Magnum station wagon, VIN
2D4FV47VX6H124174, with Car Max license tags

## APPLICATION AND AFFIDAVIT
## FOR SEARCH WARRANT

CASE NUMBER: '08 MJ 1342

I, Evelyn H. Cross _____ being duly sworn depose and say:

I am a(n) United States Postal Inspector _____ and have reason to believe

Official Title

that ☐ on the person of or ☒ on the premises known as (name, description and/or location)

See Attachments A and B

in the    SOUTHERN _____ District of   CALIFORNIA _____

there is now concealed a certain person or property, namely (describe the person or property)

See attached affidavit in support of search warrant

which is (give alleged grounds for search and seizure under Rule 41(b) of the Federal Rules of Criminal Procedure)
Evidence, fruits of crime, property designed for use or used in committing criminal offenses including violations of Title 18
Untied States Code, Sections 1341, 1343, and 1512(b)(2).  The facts to support a finding of probable cause are
As follows:

See attached Affidavit of Evelyn H. Cross continued on the attached sheet and made a part hereof.

☒ Yes    ☐ No

_Evelyn H Cross_ (signature)

EVELYN H. CROSS
United States Postal Inspector

Sworn to before me, and subscribed in my presence

April 29, 2008 _____    at    San Diego, California _____
Date                                                              City and State

The Honorable Nita L. Stormes, United States Magistrate Judge
Name and Title of Judicial Officer                                Signature of Judicial Officer

## ATTACHMENT A

### DESCRIPTION OF PLACE TO BE SEARCHED

The place to be searched is a room within the residence of Houman Haghighi, located at 8393 Capricorn Way #94, San Diego, California, in the Villa at Capricorn Condominiums. The room was rented by Solomon Nathaniel Powell, known to Mr. Haghighi as James Powell. The residence is described as a second floor condominium of a two story building. The exterior is tan stucco with a red front metal door with the number 94 on the adjacent wall. The room to be searched is a queen-size bedroom suite. It is the first room on the right as you enter the front door of the residence and proceed down the hallway. The room is gray in color, and contains a large blow up mattress, book case, and desk.

The vehicle can further be described as a 2006, silver Dodge Magnum station wagon, VIN 2D4FV47VX6H124174, with CAR MAX paper license tags. The doors are locked and the vehicle is parked on the side yard of the condominium parking lot.

## ATTACHMENT B

### LIST OF ITEMS TO BE SEIZED

The following is a list of items to be seized from the premises and vehicle identified in

ATTACHMENT A:

1.      Any and all records, including: monetary instruments, including currency,

cashier's checks, money orders, traveler's checks, and any other negotiable or non-negotiable

instruments relating to or traced to the funds and assets fraudulently obtained; bank statements

and other records of financial transactions; records and information reflecting any online sales

activity; suspect and victim personal information, including telephone numbers, addresses,

business names and identification; Post Office box or commercial mail receiving agency

(CMRA) rental and payment records; handwritten notes and "scripts;" all communications or

correspondence with purchasers; all information reflecting the disposition of proceeds from sales

via the internet; and any other documents or evidence which relates to: Solomon N. Powell's

federal felony offenses, to-wit: violations of Title 18, United States Code, Sections 1341 and

1343 by utilizing the U. S. Mail, the internet, and cell phones, to advertise, provide false

information, and accept payments for products he neither had nor intended to produce, thereby

defrauding numerous consumers; and violations of Title 18, United States Code, Section

1512(b)(2) related to his attempt to corruptly persuade another person with the intent to destroy

and conceal evidence.

2.      Computer hardware, meaning any and all computer equipment including any electronic devices that are capable of collecting, analyzing, creating, displaying, converting, storing, concealing, or transmitting electronic, magnetic, optical, or similar computer impulses or data. Included within the definition of computer hardware is any data processing hardware (such as central processing units and self-contained laptop notebook computers); internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disk drives and diskettes, tape drives and tapes, optical and compact disk storage devices, flash drives, thumb drives, jump drives, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters, video display monitors, and optical readers); related communications devices (such as modems, cables and connections, recording equipment, RAM and ROM units, acoustic couplers, automatic dialers, speed dialers, programmable telephone dialing or signaling devices, wireless routers, and electronic tone generating devices); and any devices, mechanisms, or parts that can be used to restrict access to such hardware (such as physical keys and locks).

3.      Computer software, meaning any and all information, instructions, programs, or program codes, stored in the form of electronic, magnetic, optical, or other media, which is capable of being interpreted by a computer or its related components. Computer software may also include data, data fragments, or control characters integral to the operation of computer software, such as operating systems software, applications software, utility programs, compilers, interpreters, communications software, and other programming used or intended to be used to communicate with computer components.

4.    Computer-related documentation, meaning any written, recorded, printed, or electronically-stored material that explains or illustrates the configuration or use of any seized computer hardware, software, or related items.

5.    Computer passwords and data security devices, meaning any devices, programs, or data -- whether themselves in the nature of hardware or software -- that can be used or are designed to be used to restrict access to, or to facilitate concealment of, or destruction of any computer hardware, computer software, computer-related documentation, or electronic data records. Such items include, but are not limited to, data security hardware (such as encryption devices, chips, and circuit boards); passwords; data security software or information (such as test keys and encryption codes); and similar information that is required to access computer programs or data or to otherwise render programs or data into usable form, and any evidence eliminator or data wiping software.

6.    Any computer or electronic records, documents, and materials, including those used to facilitate interstate communications, in whatever form and by whatever means such records, documents, or materials, their drafts or their modifications, may have been created or stored, including, but not limited to, any hand-made form (such as writing or marking with any implement on any surface, directly or indirectly); any photographic form (such as microfilm, microfiche, prints, slides, negative, video tapes, motion pictures or photocopies); any mechanical form (such as photographic records, printing or typing); any electrical, electronic, or magnetic form (such as tape recordings, cassettes, compact disks); or any information on an electronic or magnetic storage device (such as floppy diskettes, hard disks, CD-ROMs, computer jump drives

or thumb drives, iPods or related items, optical disks, printer buffers, sort cards, memory calculators, electronic dialers, cellular telephones, or electronic notebooks), as well as printouts or readouts from any magnetic storage device.

7.    Any electronic storage device capable of collecting, storing, maintaining, retrieving, concealing, transmitting, and using electronic data, in the form of electronic records, documents, and materials, including those used to facilitate interstate communications, including Personal Digital Assistant (PDA) devices, iPods, and similar items.  Included within this paragraph is any information stored in the form of electronic, magnetic, optical, or other coding on computer media or on media capable of being read by a computer or computer-related equipment, such as fixed disks, external hard disks, removable hard disk cartridges, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, laser disks, wireless routers, thumb drives, jump drives, or other memory storage devices.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Evelyn H. Cross, being duly sworn, deposes and states as follows:

1.      I have been employed as a United States Postal Inspector for over 17½ years. I am currently assigned to the Charlotte Division of the United States Postal Inspection Service, Richmond, Virginia Domicile. During the course of my career, I have conducted numerous criminal investigations including those involved with violations of the federal mail and wire fraud statutes, Title 18, United States Code, Sections 1341 and 1343. As part of my assigned duties, I am responsible for the investigation of the illegal use of the United States Mails in the furtherance of schemes to defraud.

2.      This affidavit is based upon information I have gained from my investigation, training and experience, as well as information related to me by other individuals, fraud investigators, and law enforcement officers. Since this affidavit is being submitted for the limited purpose of securing a search warrant based on probable cause, I have not included each and every fact known to me concerning this investigation.

3.      This affidavit is submitted in support of an application for a search warrant for the last known residence of Solomon Nathaniel Powell, located at 8393 Capricorn Way #94, San Diego, California, 92126 and his personal vehicle parked at this same location, as described in ATTACHMENT A to the Application and Affidavit for Search Warrant, for evidence of violations of Title 18, United States Code, Sections 1341 (mail fraud), 1343 (wire fraud), and 1512(b)(2) (attempting to corruptly persuade another with intent to destroy and conceal evidence) as described in ATTACHMENT B . to the Application and Affidavit for Search Warrant.

## FACTS SUPPORTING PROBABLE CAUSE

4.      This investigation first started on or about January 10, 2007 when a Virginia Better Business Bureau Investigator notified the Postal Inspection Service of numerous customer complaints related to Internet websites operated in Virginia by Solomon Nathaniel Powell.  In each case, the complainant ordered and paid for merchandise advertised on an Internet website controlled by Solomon Powell, but never received the item(s) ordered. Further investigation by Postal Inspectors resulted in the identification of six (6) websites and more than 40 victims. Some of the information developed during the investigation (described below) revealed that from on or about January 2006 through on or about February 2007, in the Eastern District of Virginia, Powell did knowingly, intentionally and unlawfully commit federal felony offenses, to-wit: violations of Title 18, United States Code, Sections 1341 and 1343 by utilizing the U.S. Mail, the internet, and cell phones, to advertise, provide false information, and accept payments for products he neither had nor intended to produce, thereby defrauding numerous consumers.  As a result of that investigation, on September 5, 2007, Powell was named in an 11-count indictment charging him with wire fraud (Counts 1-8) and mail fraud (Counts 9-11).  A copy of the indictment is attached to this affidavit as Exhibit A.

5.      On March 4, 2008, Powell was arrested in San Diego, California on the federal fraud charges.  Following his arrest, Powell engaged in obstructive conduct and encouraged another individual to conceal and destroy evidence located at 8393 Capricorn Way #94, San Diego, California, as well as evidence located in various internet email accounts.  In support of the search of that location, I am setting forth the below information, which includes: (A) General Description of Powell's Scheme and His Reliance on Computers in Perpetrating the Fraud; and (B) Powell's Arrest in California and Attempted Obstruction of Justice.

A.     **General Description of Powell's Scheme and His Reliance upon Computers in Perpetrating the Fraud:**

6.     My investigation leading up to the September 5, 2007 indictment revealed that from in or about February 2006 through in or about February 2007, Solomon Powell devised a scheme to defraud and obtain money from persons nationwide through the use of the internet, telephone, and mail in a fraudulent sales scheme in the Eastern District of Virginia.  By using internet sites, such as www.quantumelectronics.us  www.bestbargainsusa.biz www.xboxdirect.biz  and www.stuff2sell.biz, Powell advertised various electronic products for sale to the general public.  These websites purported to represent various companies connected to Powell, including Quantum Electronics; Best Bargains, USA; Xbox Direct; and Stuff 2 Sell.  My investigation has shown that Powell enticed his victims by claiming that each business was a wholesale supplier of consumer electronics and that the product is readily available, when, in fact, the items are not available.  The products offered by Powell included laptop computers, computer game platforms, digital cameras, and other items.  Victims interested in purchasing these and other electronic products from these internet businesses would contact Powell via the internet or on cellular phone numbers 804-253-7246 and 804-229-6344.  Following this initial contact, the victims would offer to purchase an electronic product depicted in the on-line advertisement.

7.     During his telephone and internet contact with the victims, Powell would generally make false representations about his true identity, the availability of the electronic products (claiming the products were in stock), his clients (claiming that he had other satisfied clients and provided products for small businesses), his staff (claiming he had other people working for him and using false identities), and the delivery process (claiming that he had a

shipping department and that the items would be or had already been mailed). Powell requested

advance payment for the advertised products, generally promising shipment within 24 hours.

Powell instructed the victims to make payment via the internet by using PayPal (an online

payment service), by supplying their credit card information directly to Powell, or by sending a

check or money order to one of Powell's business addresses. If the victim paid using the PayPal

system or provided their credit card information, the money was wired directly to one of

Powell's bank accounts.

8.      Following the transfer of money, Powell would not fill the victim's order. When

the victim grew suspicious, he or she would contact Powell through the internet email address or

telephone number. In response, Powell would generally claim that the items had been or would

be shipped in the near future, provide false mailing tracking information, or would send the

victim an incomplete order with defective or different products than those purchased by the

victim. Some customers, who threatened him with contacting the police, would get a portion

(and sometimes all) of their money returned.

9.      I interviewed Powell on February 12, 2007. After waiving his Miranda rights,

Powell provided information about his operation of the scheme. He admitted that customers

interested in purchasing electronic products from his internet businesses would contact him via

the internet or cellular phone numbers 804-253-7246 and 804-229-6344. Powell interacted with

the victim during this process via the internet or cellular phone. He said he would use a Kinko's

or a library computer to respond to customers' emails. Powell admitted that, during these

interactions with victims, he would use false names and titles to disguise his true identity.

Powell also admitted that he rented mail boxes and opened several bank accounts with SunTrust

Bank to facilitate the business. Powell admitted that the items depicted on his internet sites were

not in stock or in his possession; rather, he simply cut and pasted pictures and descriptions from legitimate internet sites such as Circuit City or Best Buy. He claimed to use the customer's money to purchase the requested items from a local retailer; however, if the item was not available at the local store, the customer's order was not filled. When he responded to the victims on the phone or internet, Powell admitted he restated the claims in his advertisements and made additional false promises and misrepresentations about the availability of the products, his clients, his staff, and the delivery process.

10.    Powell admitted that he has no other means of income or sources for financial support, including friends or family. He admitted that his accounts with SunTrust and Village Bank were utilized to receive funds obtained through the aforementioned businesses he operated. During the interview, Powell could not remember the bank account numbers but stated the accounts were used to receive wire transfers and credit card credits that represented purchases by consumers for products he was selling via internet sites.

11.    As stated previously, Powell used several fraudulent businesses in connection with this scheme, including Quantum Electronics; Best Bargains, USA; Xbox Direct; and Stuff 2 Sell. Powell, acting through these businesses, convinced the following sampling of victims to provide advance payment, for electronic products he promised to provide, but failed to do so:

(a)    *Victim 1 -* A complaint was received from Victim 1, who stated during the first week of August, 2006 she was on the internet researching sites to purchase Xbox games. Through her search she ended up on a website called www.xboxdirect.biz which advertised the product that she wanted for $300.00 each. After calling 804-229-6344, the number on the website and speaking with "James Richardson," Victim 1 placed an order for 15 Xbox 360 electronic games. Victim 1 was instructed by "James Richardson" to wire $4,500 to pay for her

order. The wiring instructions provided by Richardson were: Quantum Electronics, P. O. Box

72692, Richmond, VA 23235, for SunTrust Bank, Account Number 14000048487549. A review

of this bank account disclosed the account received a wire transfer of $4,500, on August 4, 2006.

After wiring $4500 to the SunTrust account, the complainant received only four of the 15

Xboxes she had ordered and paid for. Victim 1 continued to call the telephone number listed on

the website advertisement (804) 229-6344 to complain about not receiving her full order. Victim

1 left many unanswered telephone messages at this number. Victim 1 also attempted to contact

the company through the internet but did not receive an answer. As of February 6, 2007, Victim

1 has not heard from anyone representing themselves as an employee of Quantum Electronics,

xboxdirect.biz, or any other businesses associated with Powell. As of February 6, 2007, Victim

1 states she has not received the remaining 11 Xboxes paid for.

        (b)     ***Victim 2*** – On or about November 20, 2006, Victim 2 ordered 11 Cannon

digital cameras, from www.stuff2sell.biz for $1900. After unsuccessful attempts to pay for

these items through the internet processor "Google checkout," via his American Express credit

card, Victim 2 was actually contacted by telephone by a person using the name of "Nathan," who

claimed to be the owner of stuff2sell. Nathan offered to sell him the cameras with payment

directly over the phone via credit card. The complainant purchased the order with his American

Express (AMX) credit card, but did not receive the 11 cameras. This AMX charge to the buyer

can be traced to the SunTrust Bank account of Solomon Powell d/b/a/ Quantum Electronics.

Review of bank documents indicate an electronic credit to Powell's business account was posted

to this account on or about November 24, 2006 in the amount of $1,890.87. Victim 2 reports

after dozens of calls to "Nathan" at 804-229-6344, he received only four (4) cameras in two

separate mailings. Out of the four (4) cameras received, one camera was used and the other was

defective.  One shipment of cameras received by Victim 2 had the return address of 2711 Buford

Rd. #356, Bon Air, VA  23235, and the second package indicated it had been mailed from a UPS

Store.  The SunTrust account that received Victim 2 AMX credit was closed by Solomon Powell

on December 29, 2006.  It should be noted Powell's middle name is Nathaniel which may

explain Powell's use of the name Nathan when interacting via telephone with Victim 2.

          (c)     ***Victim 3*** - Victim 3 attempted to order an Xbox 360 from Xboxdirect, on

or about May 16, 2006, but began to interact with someone at Best Bargains, USA, who called

himself "James Richardson."  "Richardson" instructed Victim 3 to send a check made payable to

Quantum Electronics to P. O. Box 72692, Richmond, VA.   Victim 3 sent the check in overnight

mail and records confirm that it was cashed on or about May 18th through Quantum Electronics'

SunTrust Bank Account.  The endorsement is handwritten: "Quantum."  Powell admitted on

February 12, 2007 that he maintained several bank accounts at three different banks including

SunTrust.  Postal records as well as Powell's admission on February 12 indicates Powell had sole

control over the delivery location where Victim 3's personal check was mailed.  Telephone

contact on February 15, 2007 with Victim 3 disclosed she has still not received the product as

promised.

**B.**    **Powell's Statement to Houman Haghighi Relative to Contents of Personal Vehicle:**

        11.     According to the California Department of Motor Vehicles records, Solomon

Nathaniel Powell currently owns a Dodge Magnum VIN: 2D4FV47VX6H124174, with License

#5ZOW564.  The vehicle was registered under the address of 302 Washington St., #814 San

Diego, CA  92103.  The Washington Street address is a known mail drop for Solomon Powell; as

he was renting box 814 during this timeframe at this UPS Store location, using his old VA

Drivers License and former address of 2004 National Street, Richmond, VA  23231.  Powell's

landlord, Houman Haghighi, has confirmed that Powell owns and operates a 2006, silver Dodge

Magnum station wagon, with CAR MAX paper license tags. The vehicle is presently located in

the parking lot at the Villa at Capricorn Condominiums, 8393 Capricorn Way #94, San Diego,

California. Mr. Haghighi has confirmed that, as of April 22, 2008, Powell's car has remained

secure at that location since the time of Powell's arrest.

12.    Mr. Haghighi has told me that on more than one occasion, Powell has stated that

he keeps keys to storage units and mail boxes as well as business related documents in his

vehicle. In a March 27, 2008 letter to Mr. Haghighi (described in greater detail below at

paragraph 13 and attached as Exhibit B), Powell stated that he has some bank checks in his car

that he could use to pay for his storage rental. During an earlier interview with Postal Inspectors,

Powell said his standard operating procedure was to keep business merchandise and records in

his vehicle.

## C.    Powell's Arrest in California and Attempted Obstruction of Justice:

13.    Following the indictment in September 2007, I was unable to located Powell. I

have since learned that from in or about December 2007 until March 31, 2008, Powell rented a

room from Houman Haghighi at 8393 Capricorn Way #94, San Diego, California 92126. In a

letter dated March 27, 2008, Powell advised Mr. Haghighi that he had been arrested for mail and

wire fraud. He further reminded Mr. Haghighi that he had mentioned to him earlier in the year

that he was under investigation and that the FBI might get involved with some of the websites he

created. The letter is attached to this affidavit as Exhibit B.

14.    In his letter to Mr. Haghighi, Powell identified himself as James with Solomon in

parentheses. He advised Mr. Haghighi that he would not be out of prison for at least three (3)

more years. Powell provided the following instructions with respect to some of his possessions and what Mr. Haghighi was to do with each:

- Clothes – keep or donate;

- Computer, printer, and monitor – Keep printer and monitor. Shut down the computer, put it in the computer box and store in the closet on his (Haghighi) balcony.

- Camera, phone, sd cards, cds, disks and hard drive – Place all in a secure location in a box on the porch.

- Car – Haghighi could drive the car until Powell gets out of prison. Need a locksmith to unlock the doors. Extra set of keys in the glove box, and the car could be driven and parked in a safe location. Also gave him permission to drive it if the mileage was kept below 15 miles per day.

- Metal briefcase – keep in a secure location, possibly the balcony.

- Storage – There is property in storage at Public Storage on Miramar Road, located right beside the Audi car repair shop on Miramar and Camino Ruiz. Cover the cost of the storage rental by writing them a check for $75 each month using the deposit he (Powell) gave for rent. He further wrote that he had some of bank checks in his room and in his car, which he could use to cover his storage rental. Powell wrote that if he does not want to pay the rental, he could cut the lock off, take control of the property and keep in a secure location.

- Destruction of emails – Powell further instructed his landlord to delete all his emails, every one of his Google accounts on his computer, on Internet Explorer,

and on the server. To facilitate this request, Solomon Powell provided Mr. Haghighi with a list of his Internet accounts and the passwords for each one. He specifically referenced Google email (gmail) accounts: bynw08@gmail.com and bnwcorp@gmail.com. Powell stressed in his letter to delete all messages from his computer as well.

15.     According to the owner of the residence, Houman Haghighi, all of the property left by Powell remains in the original location described in ATTACHMENT A. The room has not been rented since Powell's departure. Mr. Haghighi advises that there are at least two (2) cellular telephones, a desktop computer, monitor, and printer, a silver briefcase, documents, computer software and hardware among Powell's belongings. All items are in tact as of April 24, 2008.

## SEARCH FOR RECORDS AND COMPUTER-RELATED ITEMS

16.     As a result of my experience and consultations with computer investigative specialists and other law enforcement officers, I know that targets of investigations, such as Powell, own and maintain at their residences various records (including diaries, notebooks, notes, correspondence, or other documents), personal and laptop computers, and other similar and related devices, including monitors, printers, keyboards, scanners, floppy diskettes, CDs, CD-Rs/CD-RWs, Personal Digital Assistant (PDA) devices, iPods, operating manuals, and the like (further described below), which may be used in the commission of criminal offenses and/or which contain evidence of criminal offenses. Such items and equipment may contain or reference, for example, to user profiles, email communications, address books, bookmarks, saved chat room logs, stolen account information, software programs and tools, Internet provider account names, Internet surfing data, and records of files and programs downloaded from and

uploaded to the Internet. Overall, based on this experience and the information set forth in this Affidavit, I believe probable cause exists that Powell is maintaining a computer at 8393 Capricorn Way #94, San Diego, California 92126, as well as other documents, cellular telephones, computer-related peripherals, and storage devices described in this affidavit and ATTACHMENT B. Based on the information set forth in this affidavit (including Powell's specific request that his landlord destroy the evidence as set forth above), I believe probable cause exists that Powell used his personal desktop computer and the related peripherals in some form or fashion in committing the offenses at issue and believe that evidence of those crimes may be located on those items. I further believe that probable cause exists that he will have records (such as diaries, notebooks, notes, correspondence, or other documents) that will reference his actions in committing the offenses at issue. Accordingly, there is probable cause to believe that evidence pertaining to violations of 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), and 18 U.S.C. § 1512(b)(2) (attempting to corruptly persuade another with intent to destroy and conceal evidence) is located in the documents, desktop computer, and related storage devices identified in this affidavit and ATTACHMENT B.

**A.    Electronic Evidence in General:**

17.    Based upon my knowledge, training, and experience, as well as the collective experience of other investigators involved in this investigation, I am aware that it is common for criminals who engage in a fraudulent scheme via the internet to create and store their records electronically. I am also aware that these "electronic records" are typically stored on computers or individual storage devices, such as hard disks, diskettes, CD-ROM disks, tapes, computer thumb drives or jump drives, iPods, digital audiotapes (DAT), laser disks, and Bernoulli drives, such items further described below.

18.     I know that computer hardware, software, documentation, passwords, and data security devices may be important to a criminal investigation in two distinct and important respects: (1) the objects themselves may be instrumentalities, fruits, or evidence of crime, and/or (2) the objects may have been used to create, collect and store information about crimes (in the form of electronic data).  Rule 41 of the Federal Rules of Criminal Procedure permits the government to search and seize computer hardware, software, documentation, passwords, and data security devices which are (1) instrumentalities, fruits, or evidence of crime; or (2) storage devices for information about crime.

19.     Based upon my knowledge, training, and experience, and the experience of other law enforcement personnel, I know that searches and seizures of evidence from computers commonly require Agents to seize most or all computer items (hardware, software, jump drives, iPods, disks, and instructions) to be processed later by a qualified computer expert in a laboratory or other controlled environment for the following reasons:

A.     Computer storage devices (like iPods, hard disks, diskettes, CD-ROM disks, tapes, computer thumb drives or jump drives, digital audiotapes (DAT), laser disks, Bernoulli drives, and others) can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order, with deceptive file names. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take months, depending on the volume of data stored, and it would be impractical to attempt this kind of data search on site.

B.    Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert would analyze the system. It is an exacting scientific procedure which is assigned to protect the integrity of the evidence and to recover even hidden, erased, compressed, password protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (both from external sources and from destructive codes imbedded in the system as a "booby trap"), the controlled environment of a laboratory is essential to its complete and accurate analysis.

C.    In order to fully retrieve data from a computer system, the analyst needs all magnetic storage devices as well as the central processing unit (CPU). In cases where evidence may consist of graphic files, the monitor, printer and all used printer cartridges are also essential to show the nature and quality of the graphic images which the system could produce. In addition, the analyst needs all the system software (operating systems or interfaces, wireless routers, and hardware drivers) and any application software, with all corresponding computer manuals which may have been used to create the data whether stored on hard drives or on external media.

D.    A single floppy disk can store dozens of images and hundreds of pages of text. A single drum disk can store the equivalent of at least 500 floppy disks. The size of the electronic storage media (commonly referred to as the hard drive) used in

home computers has grown tremendously within the last several years. Hard drives with a capacity of one gigabyte are not uncommon. These drives can store thousands of images at very high resolution. Magnetic storage located host computers adds another dimension to the equation. It is only with careful laboratory examination of electronic storage devices that it is possible to recreate the evidence trail.

**B.     Electronic Records Contained on Computer Hardware, Associated Peripherals, and Other Digital Media:**

20.     For the purpose of this search warrant affidavit and the materials requested in ATTACHMENT B, the terms "records," "documents" and "materials" include all of the items described in ATTACHMENT B in whatever form and by whatever means they may have been created and/or stored. This includes any handmade, photographic, mechanical, electrical, electronic, and/or magnetic forms. It also includes items in the form of computer hardware, software, documentation, passwords, and/or data security devices, including the following "electronic records":

A.     Computer hardware, meaning any and all computer equipment including any electronic devices that are capable of collecting, analyzing, creating, displaying, converting, storing, concealing, or transmitting electronic, magnetic, optical, or similar computer impulses or data. Included within the definition of computer hardware is any data processing hardware (such as central processing units and self-contained laptop notebook computers); internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disk drives and diskettes, tape drives and tapes, optical and compact disk storage devices, flash drives,

thumb drives, jump drives, and other memory storage devices); peripheral

input/output devices (such as keyboards, printers, scanners, plotters, video display

monitors, and optical readers); related communications devices (such as modems,

cables and connections, recording equipment, RAM and ROM units, acoustic

couplers, automatic dialers, speed dialers, programmable telephone dialing or

signaling devices, wireless routers, and electronic tone generating devices); and

any devices, mechanisms, or parts that can be used to restrict access to such

hardware (such as physical keys and locks).

B.     Computer software, meaning any and all information, instructions, programs, or

program codes, stored in the form of electronic, magnetic, optical, or other media,

which is capable of being interpreted by a computer or its related components.

Computer software may also include data, data fragments, or control characters

integral to the operation of computer software, such as operating systems

software, applications software, utility programs, compilers, interpreters,

communications software, and other programming used or intended to be used to

communicate with computer components.

C.     Computer-related documentation, meaning any written, recorded, printed, or

electronically-stored material that explains or illustrates the configuration or use

of any seized computer hardware, software, or related items.

D.     Computer passwords and data security devices, meaning any devices, programs,

or data -- whether themselves in the nature of hardware or software -- that can be

used or are designed to be used to restrict access to, or to facilitate concealment

of, or destruction of any computer hardware, computer software, computer-related

documentation, or electronic data records. Such items include, but are not limited to, data security hardware (such as encryption devices, chips, and circuit boards); passwords; data security software or information (such as test keys and encryption codes); and similar information that is required to access computer programs or data or to otherwise render programs or data into usable form, and any evidence eliminator or data wiping software.

E.   Any computer or electronic records, documents, and materials, including those used to facilitate interstate communications, in whatever form and by whatever means such records, documents, or materials, their drafts or their modifications, may have been created or stored, including, but not limited to, any hand-made form (such as writing or marking with any implement on any surface, directly or indirectly); any photographic form (such as microfilm, microfiche, prints, slides, negative, video tapes, motion pictures or photocopies); any mechanical form (such as photographic records, printing or typing); any electrical, electronic, or magnetic form (such as tape recordings, cassettes, compact disks); or any information on an electronic or magnetic storage device (such as floppy diskettes, hard disks, CD-ROMs, computer jump drives or thumb drives, iPods or related items, optical disks, printer buffers, sort cards, memory calculators, electronic dialers, cellular telephones, or electronic notebooks), as well as printouts or readouts from any magnetic storage device.

F.   Any electronic storage device capable of collecting, storing, maintaining, retrieving, concealing, transmitting, and using electronic data, in the form of electronic records, documents, and materials, including those used to facilitate

interstate communications, including Personal Digital Assistant (PDA) devices, iPods, and similar items. Included within this paragraph is any information stored in the form of electronic, magnetic, optical, or other coding on computer media or on media capable of being read by a computer or computer- related equipment, such as fixed disks, external hard disks, removable hard disk cartridges, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, laser disks, wireless routers, thumb drives, jump drives, or other memory storage devices.

**C.     Search Procedure for Computer Hardware and Associated Peripherals:**

21.     The search procedure of the electronic data contained in the computer operating software or memory devices may include the following techniques:

    a.   surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);

    b.   "opening" or cursorily reading the first few "pages" of such files in order to determine their precise contents;

    c.   "scanning" storage areas to discover and possibly recover recently deleted files;

    d.   "scanning" storage areas for deliberately hidden files; or

    e.   performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation.

22.     Permission is requested to search the computers, associated peripherals, and other computer-related devices described above in this manner, even though there may be unrelated

information stored on those items.  This unrelated data will not be used and will be separated (to the extent possible) from the evidentiary data and preserved.  If we suspect the unrelated data contains evidence of additional criminal activity, we will seek another search warrant.  If the individual from whom the computer system, related peripherals, or other electronic devices has been seized needs access to non-contraband files, or personal information stored on these items, such files will be copied and provided to the individual within a reasonable time of the request.

## CONCLUSION

23.         Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that the evidence of violations of 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), and 18 U.S.C. § 1512(b)(2) (attempting to corruptly persuade another with intent to destroy and conceal evidence) will be located at the residence of Solomon Nathaniel Powell, located at 8393 Capricorn Way #94, San Diego, California and the 2006 silver Dodge Magnum station wagon, VIN  2D4FV47VX6H124174, with CAR MAX license tags, further described in ATTACHMENT A.  I, therefore, respectfully request that this Court issue a search warrant authorizing the search and seizure of the items listed in ATTACHMENT B found at that location.

Evelyn H. Cross, Postal Inspector
United States Postal Inspection Service


Subscribed and sworn to before me this _27_ day of April, 2008, in the City of San Diego, California.

THE HONORABLE NITA L. STORMES
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF CALIFORNIA

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Richmond Division



| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 3:07CR 324 (JRS) |
| | ) | |
| v. | ) | 18 U.S.C. §§ 1343 and 2 |
| | ) | Wire Fraud |
| | ) | (Counts 1-8) |
| | ) | |
| SOLOMON N. POWELL | ) | 18 U.S.C. §§ 1341 and 2 |
| | ) | Mail Fraud |
| | ) | (Counts 9-11) |
| Defendant. | ) | |

## INDICTMENT

September 2007 Term - At Richmond, Virginia

## INTRODUCTION

1.     GoDaddy.com is a domain name registrar and is the flagship company of The Go

Daddy Group, Inc., which is located at 14455 North Hayden Road in Scottsdale, Arizona.

GoDaddy accepts applications from individuals or entities wishing to register a domain name that

is under GoDaddy's control.   GoDaddy also provides website creation, hosting, marketing, and

management support to its customers.

2.     On or about the dates set forth below, Defendant SOLOMON N. POWELL

registered the following domains on and through GoDaddy.com.  These domains were

maintained by GoDaddy.com on servers located in Arizona.

| Date (on or about) | Business Name and Domain Name | Contact Address, Telephone Number, and Email |
|---|---|---|
| February 13, 2006 | Best Bargains USA<br><br>BESTBARGAINSUSA.BIZ | 2004 National Street<br>Richmond, Virginia 23231<br><br>(804) 253-7246<br><br>solopow@hotmail.com |

Exhibit A

| Date (on or about) | Business Name and Domain Name | Contact Address, Telephone Number, and Email |
|---|---|---|
| September 28, 2006 | Stuff 2 Sell<br><br>STUFF2SELL.BIZ | 2004 National Street<br>Richmond, Virginia 23231<br><br>(804) 253-7246<br><br>solopow@hotmail.com |
| November 29, 2006 | Stuff 2 Buy<br><br>STUFF2BUY.BIZ<br>STUFF2BUYUSA.COM | 2004 National Street<br>Richmond, Virginia 23231<br><br>(804) 253-7246<br><br>solopow@hotmail.com |

3.    eBay is a website that serves as an auction house facilitating online transactions between buyers and sellers of goods and services. Individuals can establish a User Identification (User ID) on the eBay system and operate through that User ID to sell goods, including electronics equipment. Posting an item for sale on eBay involves the electronic transfer of data by way of a wire transmission between the computer of the seller and the computer servers of eBay. eBay maintains servers in Centennial, Colorado; San Jose, California; and Santa Clara, California. eBay servers store data received from eBay sellers and transmits data to eBay buyers who are interested in bidding or reviewing the item up for auction.

4.    On or about the dates set forth below, POWELL registered the following User ID's on the eBay system:

| Date (on or about) | Business Name and User ID | Contact Address, Telephone Number, and Email |
|---|---|---|
| June 12, 2003 | Quantum Electonics<br><br>quantumshop | P.O. Box 321<br>Richmond, Virginia 23218<br><br>(804) 247-0185<br><br>quantum@msn.com |

| Date (on or about) | Business Name and User ID | Contact Address, Telephone Number, and Email |
|---|---|---|
| August 12, 2003 | Solomon Powell<br><br>solnov2003 | 2004 National Street<br>Richmond, Virginia 23231<br><br>(804) 247-0185<br><br>quantumshop@yahoo.com |

5.      PayPal is a service that individuals buying items via the Internet can use to pay for products with a credit card or directly from their bank account.  Individuals selling products via the Internet can receive the proceeds of the sale as an electronic transfer to their PayPal account. Users of PayPal services can transfer money from their PayPal account to their bank account. PayPal transactions are processed through servers located in Omaha, Nebraska; San Jose California; and Phoenix, Arizona.

6.      On or about the dates set forth below, POWELL established a PayPal account for internet transactions:

| Date (on or about) | Business Name | Contact Address, Telephone Number, and Email |
|---|---|---|
| August 12, 2006 | Best Bargains USA | P.O. Box 72692<br>Richmond, Virginia 23235<br><br>(804) 253-7246<br><br>bestbargainsusa@gmail.com |

3

| Date (on or about) | Business Name | Contact Address, Telephone Number, and Email |
|---|---|---|
| June 20, 2003 | Quantum Electronics | P.O. Box 321 Richmond, Virginia 23218<br><br>2004 National Street Richmond, Virginia 23231<br><br>5604 Tumbleweed Drive Richmond, Virginia 23228<br><br>P.O. Box 12484 Richmond, Virginia 23241<br><br>(804) 396-3125<br><br>quantumstore@hotmail.com |

7.      On or about the dates set forth below, POWELL registered a Merchant Account with American Express.  American Express processes all of its transactions through Phoenix, Arizona.

| Date (on or about) | Business Name | Contact Address |
|---|---|---|
| May 11, 2006 | Best Bargains USA | 2004 National Street Richmond, Virginia 23231 |
| January 7, 2003 | Quantum Electronics | 2004 National Street Richmond, Virginia 23231 |
| October 18, 2006 | Stuff 2 Sell | 2711 Buford Road, No. 356 Bon Air, Virginia 23235 |

4

## COUNTS ONE THROUGH EIGHT

THE GRAND JURY CHARGES THAT:

1.  The Grand Jury realleges and incorporates by reference the Introduction section contained above, as if fully set forth herein.

2.  From on or about February 13, 2006, through on or about February 19, 2007, in the Eastern District of Virginia and elsewhere, defendant SOLOMON N. POWELL and others unknown to the Grand Jury, knowingly devised and intended to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, which scheme and artifice, and the execution thereof, operated in substance as follows:

## THE SCHEME AND ARTIFICE

3.  The object of the defendant's scheme and artifice was to obtain monies by fraudulent means from persons seeking to use internet websites to buy various goods, including laptop computers, cameras, electronic game consoles, iPods, and other electronic products.

4.  It was a part of the defendant's scheme and artifice to establish websites through GoDaddy.com and accounts on the auction website eBay for use in offering various electronic products for sale on the internet.

5.  It was further a part of the defendant's scheme and artifice to operate through the websites and offer to sell and to sell electronic goods that the defendant had no intention of supplying to victims.

6.  It was further a part of the defendant's scheme and artifice to make false promises and representations indicating that the electronic goods would be delivered following receipt of a victim's payment.

7.  It was further a part of the defendant's scheme and artifice that the defendant attempted to obtain money from victims through false, fraudulent, and misleading

5

representations, pretenses, and promises which were made to induce the victims to send payments and then abandon the transaction without receiving the electronic goods. These false, fraudulent and misleading representations and promises included, but were not limited to the following:

    (a)    That the electronic products listed on the web sites were in stock and available for delivery once payment was provided.

    (b)    That the defendant intended to send the electronic products purchased by the victims, as opposed to less valuable goods or products that had been tampered with prior to delivery.

    (c)    That the items had been shipped as evidenced by false shipping tracking numbers or electronic messages.

8.    It was further a part of the defendant's scheme and artifice that the defendant would sometimes speak with victims on the telephone regarding the status of their orders. During those conversations, POWELL would sometimes use different names to disguise his identity.

9.    It was further a part of the defendant's scheme and artifice that the defendant caused victims to send payment by wire transfer, credit card, PayPal, or United States mail.

10.    It was further a part of the defendant's scheme and artifice that after receiving victims' payments, the defendant through interstate e-mails and telephone conversations lulled the victims into a false sense of security that the merchandise would be shipped.

## WIRE FRAUD IN CONNECTION WITH THE SCHEME

11.    On or about the dates set forth below, in the Eastern District of Virginia and elsewhere, defendant SOLOMON N. POWELL, aided and abetted by other persons unknown to the Grand Jury, with the intent to defraud and for the purpose of executing a scheme and artifice to defraud and to obtain money and property from the individuals set forth below through materially false representations in connection with the scheme set forth above, did knowingly

6

cause to be transmitted, in interstate commerce, by means of wire communications, certain

writings, signs, signals and sounds associated with the posting of sales information on the

internet websites and the monetary transfers described below:

| Count | Date (on or about) | Victim | Defendant's Website Business Contacted by Victim | Details of Transaction |
|---|---|---|---|---|
| 1 | February 23, 2006 | J.D. Chicago, Illinois | Best Bargains USA | J.D. agreed to purchase five Apple 2 GB iPod Nanos for $499.95 and a Best Bargains Retail Membership for $39.99 from Best Bargains USA. J.D. transferred payment to Best Bargains USA via PayPal on February 23, 2006. J.D. received email notification that the transaction had been processed and that the electronic products would be shipped. J.D. never received the iPods. |
| 2 | July 11, 2006 | P.H. of iNet Electronix, LLC Richmond, Virginia | Best Bargains USA | P.H. agreed to purchase 30 Apple iPods, 1 Philips 42-inch plasma television, and 1 Sony Playstation portable for $9,825.04. On July 11, 2006, P.H. transferred $9,900.00 to Best Bargains USA via wire transfer to a SunTrust Bank business checking account in the name of "Solomon Powell d/b/a Quantum Electronics." Following numerous email exchanges regarding delays in delivery, P.H. received six Apple iPods and an incorrect version of the Sony Playstation. P.H. was later able to reverse the wire transfer by working through SunTrust bank officials. |
| 3 | July 19, 2006 | P.H. of iNet Electronix, LLC Richmond, Virginia | Best Bargains USA | P.H. agreed to purchase 35 Apple iPods, 1 Philips 42-inch plasma television, and 85 X-Box video games for $9,721.53. On July 19, 2006, P.H. wire transferred payment to Best Bargains USA via wire transfer to a SunTrust Bank business checking account in the name of "Solomon Powell d/b/a Quantum Electronics." Following numerous email exchanges regarding delays in delivery, P.H. received five Apple iPods. P.H. was later able to reverse the wire transfer by working through SunTrust bank officials. |

7

| Count | Date (on or about) | Victim | Defendant's Website Business Contacted by Victim | Details of Transaction |
|---|---|---|---|---|
| 4 | August 11, 2006 | M.R. Rockville Centre, New York | Best Bargains USA | M.R. agreed to purchase a Sony VAIO VGN-UX180P Ultraportable Mico PC for $1,414.11 from Best Bargains USA. M.R. made the payment to Best Bargains USA via American Express credit card on August 11, 2006. M.R. received email notification that the transaction was being processed and later received United Parcel Service (UPS) tracking numbers for the order. M.R. never received the computer, but later received a Toshiba DVD player that she never ordered. |
| 5 | August 7, 2006 | J.H. Cocoa, Florida | Best Bargains USA | J.H. agreed to purchase a Sony VAIO VGN-UX180P Ultraportable Mico PC for $1,395.19 from Best Bargains USA. J.H. made the payment to Best Bargains USA via Chase Bank Visa credit card on August 7, 2006. J.H. received email notification that the transaction was being processed. J.H. never received the computer. |
| 6 | November 20, 2006 | J.L. Maineville, Ohio | Stuff 2 Sell | J.L. agreed to purchase 11 Canon PowerShot SD600 digital cameras for $1959.45 from Stuff 2 Sell. J.L. made the payment to Stuff 2 Sell via American Express credit card on November 20, 2006. J.L. received only two Canon PowerShot SD600 cameras. |
| 7 | February 15, 2007 | C.P. Flint, Michigan | Stuff 2 Buy USA | C.P. agreed to purchase one HP Pavilion computer for $679.99 from Stuff 2 Buy USA. C.P. transferred payment to Stuff 2 Buy USA via PayPal on February 15, 2007. C.P. received email notification that the computer would be shipped by United Parcel Service (UPS). C.P. received a different model computer that had been previously opened. After sending the incorrect computer back, C.P. never received the computer she ordered. |

| Count | Date (on or about) | Victim | Defendant's Website Business Contacted by Victim | Details of Transaction |
|-------|------|--------|----------------------|------------------------|
| 8 | February 19, 2007 | E.L. Foster City, California | Stuff 2 Buy USA | E.L. agreed to purchase one Apple 80 GB iPod for $311.04 from Stuff 2 Buy USA. E.L. transferred payment to Stuff 2 Buy USA via PayPal on February 19, 2007. E.L. received email notification that the transaction was being processed and that the iPod would be shipped by USPS priority mail. E.L. never received the iPod. |

(All in violation of Title 18, United States Code, Sections 1343 and 2).

9

## COUNTS NINE THROUGH ELEVEN

THE GRAND JURY FURTHER CHARGES THAT:

1.     The Grand Jury realleges and incorporates by reference the allegations contained in Count One paragraphs 1 through 10 as if fully set forth herein.

## MAIL FRAUD IN CONNECTION WITH THE SCHEME

2.     On or about the dates set forth below, in the Eastern District of Virginia and elsewhere, defendant SOLOMON N. POWELL, aided and abetted by other persons known and unknown to the Grand Jury, with the intent to defraud and for the purpose of executing a scheme and artifice to defraud and to obtain money and property from the individuals set forth below through materially false representations in connection with the scheme set forth above, did knowingly cause to be placed in an authorized depository for mail matter to be sent and delivered by the United States Postal Service, according to the directions thereon, items in the manner described below, each transaction constituting a separate charge in this indictment:

| Count | Date (on or about) | Victim | Defendant's Website Business Contacted by Victim | Details of Transaction |
|---|---|---|---|---|
| 9 | May 16, 2006 | H.P. New Fairfield, Connecticut | Best Bargains USA  Quantum Electronics | H.P. agreed to purchase an X-Box 360 game console from Best Bargains USA for $549.99. H.P. wrote a personal check in the amount of $549.99, made payable to Quantum Electronics. On or about May 16, 2006, H.P. mailed the check as instructed to P.O. Box 72692, Richmond, Virginia via the United States Postal Service. The check was later deposited into a SunTrust Bank account controlled by POWELL, doing business as Quantum Electronics. H.P. did not receive the X-Box 360. |

10

| Count | Date (on or about) | Victim | Defendant's Website Business Contacted by Victim | Details of Transaction |
|-------|--------------------|--------|--------------------------------------------------|------------------------|
| 10 | June 28, 2006 | A.S. Greenville, California | Best Bargains USA<br><br>Quantum Electronics | A.S. agreed to purchase an X-Box 360 Premium Platinum Bundle from Best Bargains USA for $649.00. A.S. wrote a check in the amount of $649.00, made payable to Quantum Electronics. On or about June 28, 2006, A.S. mailed the check as instructed to P.O. Box 72692, Richmond, Virginia via the United States Postal Service. The check was later deposited into a SunTrust Bank account controlled by POWELL, doing business as Quantum Electronics. Following many telephone calls, A.S. received an X-Box 360 game console without the games and other bundle items included in her original order. |
| 11 | September 15, 2006 | A.A. Windsor, Virginia | Best Bargains USA<br><br>Quantum Electronics | A.A. agreed to purchase a Compaq Presario Notebook computer from Quantum Electronics for $428.94. A.A. wrote a personal check in the amount of $428.94, made payable to Quantum Electronics. On or about September 15, 2006, A.A. mailed the check as instructed to P.O. Box 72692, Richmond, Virginia via the United States Postal Service. The check was later negotiated by POWELL. A.A. did not receive the computer. |

(All in violation of Title 18, United States Code, Sections 1341 and 2).

11

## FORFEITURE ALLEGATION

Pursuant to Rule 32.2(a) FED. R. CRIM. P., the defendant is hereby notified that, if

convicted of the offenses alleged in Counts One through Eleven  the defendant shall forfeit to the

United States his interest in any property constituting, or derived from, proceeds obtained directly

or indirectly as the result of such violation(s),  including but not limited to the following:

> the sum of $7,872.31 U.S. currency, representing the contents of SunTrust
> Bank account #1000049047649 (07-USP-000426) and

> the sum of $8,431.02 U.S. currency, representing the contents of SunTrust Bank
> account # 1000049047656 (07-USP-000427).

If property subject to forfeiture cannot be located, the United States will seek an order forfeiting

substitute assets.

(In accordance with 18 U.S.C. §§ 982 (a)(2), 981 (a)(1)(C) and 28 U.S.C. § 2461 (c).)

A TRUE BILL

Pursuant to the E-Government Act,
the original of this page has been filed
under seal in the Clerk's Office

FOREPERSON

CHUCK ROSENBERG
UNITED STATES ATTORNEY

By:    _Michael Gill_

Michael R. Gill
Assistant United States Attorney

13

# EXHIBIT B

3/27/08                    ATTN:  CROSS, E.

Houman,

        It's me, James (Solomon) and you know by now that I was arrested
earlier this month. I just want to tell you that I apologize for all the
confusion and mess that I have caused and that I wish the best for you and
your friends. You have been a very nice and respectful person and I should
have treated you with more respect. As I told you earlier this year, I was
under investigation and that the FBI might get involved with some of the
websites I created (which they did). I am being held and charged with
wire and mail fraud for non-delivery of merchandise. I have no bail and will
not be out of prison for at least three more years. In the meantime, I ask that
you do the following with my property:

1). Clothes — you can keep or donate all my clothes.

2). Computer, printer, monitor — You can keep my printer and monitor,
    however please shut down my computer and store it in the
    computer box (in the closet) on your balcony.

3). Camera, phone, SD cards, cds, dvds, hard drive — Place all of these in
    a secure location in a box on your porch. Please make sure my
    black hard drive doesn't drop.

4). Car — you can drive the car until I get out of prison. You have to
    unlock the doors by calling a locksmith. An extra set of keys
    is in the glovebox. You might have to pay $90 to unlock the car.
    Once the car is unlocked, you can drive the car and park it in
    a safe location.

5). Metal briefcase — there is a big metal briefcase in my room. Please
    keep this also in a secure location, possibly your balcony.

6). Storage — I have more property in storage at Public Storage
    on Miramar Road. They are located right beside the AUDI car
    repair shop on Miramar and Camino Ruiz.

                                        continued on back

                                                        Exhibit  B

Please cover the costs of my storage rental by writing them a check for $75 each month using the deposit I gave you for rent. You can also find some of my own bank checks in my room and in my car which you can write to cover my storage rental. The name of the storage facility is Public Storage on Miramar and Camino Ruiz. Give them a copy of this letter as authorization for you to have access to my unit. If you don't want to pay the rental, you can have the lock cut off and I will you permission to take control of my property and keep it in a secure location.

This letter can also be used if you decide to drive my car and you're pulled over by the cops. This letter will authorize you to use my car and drive it. Please keep the mileage below 15 miles per day.

Please write me back ASAP and inform me of what's happening.

Thanks a lot,
Solomon (James) Powell

*[signature]*

---

Delete these Google (gmail) accounts on my computer:
bvpw08@gmail.com - password: capricorn2008

bnwxorp@gmail.com - password: Hewop08
Delete EVERY Google account you see on my computer on Internet explorer.

---

Additional info: Please also do the following-
Log in to my computer, password: Hewop 088512 vm

Goto Outlook in the Microsoft office.
In Outlook, you will see settings for all my email accounts.
Under Account Settings for the emails service@cpusa.biz, service@edawkusa.com, service@wiibundles direct.com and all other emails do the following:
Choose "delete all messages from server" or "do not leave messages on server"
Or better, just log into my computer, password is Hewop 088512 vm, go to Outlook and delete all email messages.

Write me back and let me know if you're able to do these things and delete all my emails.
(Write me back with the exact information on the envelope addressed to me.)